<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
ELY COOPER,                    :
                               :   Civil Action No. 10-5245 (FSH)
            Plaintiff,         :
                               :
                               :
            v.                 :   OPINION
                               :
KENNETH SHARP, et al.,         :
                               :
            Defendants.        :
```

**APPEARANCES:**

> ELY COOPER, Plaintiff <u>pro se</u>
> #193
> East Jersey State Prison, Special Treatment Unit
> CN 905, 8 Production Way
> Avenel, New Jersey 07001

**HOCHBERG,** District Judge

Plaintiff, Ely Cooper, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24, <u>et seq.</u>, seeks to bring this action <u>in forma pauperis</u>. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether the action should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks

monetary relief from a defendant who is immune from such relief.
For the reasons set forth below, the Court concludes that this
action should be dismissed for failure to state a claim at this
time.  In addition, plaintiff's motion for a preliminary
injunction will be denied as moot.

I.   <u>BACKGROUND</u>

Plaintiff, Ely Cooper ("Cooper"), brings this civil rights
action, pursuant to 42 U.S.C. § 1983, against the following
defendants: Kenneth Sharp, Assistant Attorney General for the
State of New Jersey; Debbie Hasting, Superintendent at the East
Jersey State Prison, Special Treatment Unit ("EJSP-STU"); Dr.
Merril Main, Clinical Director at EJSP-STU; Steve Johnson,
Assistant Superintendent at EJSP-STU; John Main, Chief Director
of the New Jersey Department of Human Services ("NJDHS") at the
Ann Klein Forensic Center in Trenton, New Jersey; and Jennifer
Velez, Commissioner of the NJDHS.  (Complaint, Caption and ¶¶ 4b-
4g).  The following factual allegations are taken from the
Complaint, and are accepted for purposes of this screening only.
The Court has made no findings as to the veracity of plaintiff's
allegations.

In his Complaint, Cooper alleges that defendants have either
authorized or condoned the New Jersey Department of Corrections
to place plaintiff, a civilly committed resident, on prison
grounds and under prison policy and guidelines in violation of

his constitutional rights and his patients' bill of rights. (Compl., ¶¶ 4b-4g). In addition, Cooper complains that defendants Merril Main and John Main have allowed correctional officers at EJSP-STU to dictate how therapy groups are run, in particular, giving plaintiff only five-minute movement option to get to group knowing that the doors are controlled by the NJDOC staff. (Compl., ¶¶ 4d and 4f).

Specifically, Cooper alleges that, on May 18, 2010, defendant Johnson was made aware that the residents at EJSP-STU were being treated like prisoners by the EJSP correctional officers. (Compl., ¶ 6). Also on that day, it had rained and water dripped from the ceiling leaving a white foam substance on the ceiling and water spots on the floor where it had puddled. (Id.).

On May 19, 2010, Cooper observed the NJDHS staff psychiatrists, psychologists and social workers moving their office supplies off grounds to a location in Edison, New Jersey, leaving plaintiff with no on-site psychiatrist after 4:00 p.m. (Id.). On May 21, 2010, Assistant Administrator Conway allegedly came on plaintiff's unit at EJSP-STU and told Cooper and other residents how therapy groups would be run and that plaintiff might be taken out of some therapy sessions. (Id.).

On May 27, 2010, as Cooper was returning from the yard, he was pat searched and finger scanned (Ion scan) by Internal

Affairs for the STU.  Cooper states that the pat search and finger scan was watched and conducted by first shift correctional officer, Lt. Morrison.  (Id.).

Cooper next alleges that residents are banned from going to the law library at the EJSP.  (Id.).  Further, Cooper states that he was placed on treatment probation on July 16, 2010, for not attending groups due to the correctional officers dictating how therapy groups will be run.  Cooper complains that he has been told to talk about his feelings about this at group, which he contends hinders his mental actions in group.  On July 26, 2010, he was approached by Sgt. Vessell who told plaintiff that plaintiff had to move to group on the NJDOC's call.  (Id.).

Cooper also states that, on May 12, 2010, he was informed that mail and packages are to be sent and/or received at the Avenel facility and not at EJSP-STU in Rahway where he is confined.  He provides a copy of a May 14, 2010 memo advising residents that First Class mail and packages from home will be mailed to STU CN 905 at Avenel, and that packages from UPS or Fed Ex will be mailed to STU 8 Production Way at Avenel, New Jersey. (Id.).

On August 25, 2010, Cooper filed numerous grievances with defendants Merril Main and Steve Johnson, as well as with Unit Director Shantay Brame Adams and Chief Cathy Buchannan.  Cooper

4

complains that he has not received responses to these grievances. (Id.).

Also, on August 25, 2010, Cooper alleges that he was verbally harassed by correctional officers, causing him to feel "mentally degraded' and humiliated.  Cooper complains that since his arrival at the EJSP-STU, his therapy group movements have been run by the NJDOC correctional staff, causing plaintiff to be taken out of groups, and having to attend groups in a caged and boarded-up, fenced area.  Cooper states that he feels like he is being treated as a "problem prisoner" instead of a civilly committed resident.  (Id.).

Cooper asks to be placed in a federally funded treatment facility.  He also seeks monetary compensation for being placed in a prison environment where he has suffered mental anguish, harassment, and discrimination.  (Compl., ¶ 7).

On October 20, 2010, the Court received a motion filed by Cooper seeking a temporary restraining order directing defendants not to retaliate against plaintiff by confiscating his court papers or placing plaintiff on "MAP" (modified activities program) status.  (See Docket entry no. 2).  Cooper alleges that he has been banned from law library materials and has been placed under prison policy guidelines and procedures even though he is not a prisoner.  He also alleges that he has been threatened with MAP status if he does not follow the NJDHS "way."  He also

complains that he has been separated from his "mental support."
(Id.).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a
civil action where the litigant is proceeding in forma pauperis.
Specifically, the court is required to identify cognizable claims
and to sua sponte dismiss any claim that is frivolous, malicious,
fails to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such relief,
pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because
Cooper is proceeding in forma pauperis in this matter, this
action is subject to sua sponte screening for dismissal under 28
U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94
(2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and
Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United
States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff."  Morse v. Lower
Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court
need not, however, credit a pro se plaintiff's "bald assertions"
or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in <u>Bell</u>

<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the

proposition that "[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting

<u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two

working principles underlying the failure to state a claim

standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  <u>Fed.</u>
> <u>Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
<u>Fed.R.Civ.P.</u> 8(d).

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that

---

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

the plaintiff has a "plausible claim for relief." [<u>Id</u>.]  In
other words, a complaint must do more than allege the
plaintiff's entitlement to relief.  A complaint has to
"show" such an entitlement with its facts.  <u>See</u> <u>Phillips</u>,
515 F.3d at 234-35.  As the Supreme Court instructed in
<u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not 'show[n]'-'that
the pleader is entitled to relief.'"  <u>Iqbal</u>, [129 S.Ct. at
1949-50].  This "plausibility" determination will be "a
context-specific task that requires the reviewing court to
draw on its judicial experience and common sense." <u>Id</u>.

<u>Fowler</u>, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this

<u>pro</u> <u>se</u> pleading must be construed liberally in favor of

Plaintiff, even after <u>Iqbal</u>.  See <u>Erickson v. Pardus</u>, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to

amend, unless it finds bad faith, undue delay, prejudice or

futility. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 110-

111 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 117 (3d Cir.

2000).

III.  SECTION 1983 ACTIONS

Cooper brings this action pursuant to 42 U.S.C. § 1983.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

IV.  THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 *et seq.*, provides
for the custody, care and treatment of involuntarily committed
persons who are deemed to be sexually violent predators ("SVP").
N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections
("DOC") operates the facilities designated for SVPs, N.J.S.A.
30:4-27.34(a); and the New Jersey Department of Human Services
("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b).
The SVPA was amended in 2003 to require that regulations be
promulgated jointly by the DOC and the DHS, in consultation with

11

of the Attorney General, taking "into consideration the rights of
the patients as set forth in section ten of P.L. 1965, c. 59 (C.
30:4-24.2) ... [to] specifically address the differing needs and
specific characteristics of, and treatment protocols related to,
sexually violent predators." N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made
specific findings regarding SVPs. N.J.S.A. 30:4-27.25.  The
Legislature noted that it was necessary to modify the previous
civil commitment framework and additionally separate SVPs from
other persons who have been civilly committed. Id.  The SVPA
defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent
> or found not guilty by reason of insanity for commission of
> a sexually violent offense, or has been charged with a
> sexually violent offense but found to be incompetent to
> stand trial, and suffers from a mental abnormality or
> personality disorder that makes the person likely to engage
> in acts of sexual violence if not confined in a secure
> facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual
review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released
from involuntary civil commitment upon recommendation of the DHS
or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

V.  ANALYSIS

A.  Transfer to Prison Facility Claim

Cooper's main argument appears to claim that his transfer to
a prison facility, as a civilly committed person under the SVPA,

12

is unconstitutional because he is subject to the prison policies in place for the orderly operation and security of a prison facility.

In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court examined the conditions of confinement provided by Kansas' Sexually Violent Predator Act.  The Act called for the confinement of sexually violent predators in a secure facility because they were dangerous to the community.  Id., 521 U.S. at 363-64.  Pertinent here, the Supreme Court was aware that the sexually violent predators in Kansas were to be held in a segregated unit within the prison system.  However, the Court noted that the conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals.  Moreover, confinement under the Act was not necessarily indefinite in duration, and the Act provided for treatment.  Id., 521 U.S. at 363, 364, 365-368.  Thus, the Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed.  Id., 521 U.S. at 368-69.  See also Seling v. Young, 531 U.S. 250, 261062 (2001)(holding same with respect to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld

13

as constitutional by the Supreme Court in <u>Hendricks</u> and <u>Seling</u>, respectively.[3]  <u>See</u> <u>Bagarozy v. Goodwin</u>, Civil Action No. 08-468 (SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); <u>In re Commitment of W.Z.</u>, 173 N.J. 109, 801 A.2d 205, 211 (2002). Therefore, this Court finds that Cooper's placement and confinement in a Special Treatment Unit for SVP residents that is a segregated unit in the East Jersey State Prison, does not, in and of itself, violate the U.S. Constitution's Due Process Clause or the Eighth Amendment's prohibition against cruel and unusual punishment.  Accordingly, Cooper's claim that his continued confinement in a segregated unit within a prison facility is unconstitutional must be dismissed for failure to state a cognizable claim of a constitutional deprivation.

B.  <u>Conditions of Confinement Claim</u>

Although plaintiff's placement in a segregated unit within a prison facility is not, in and of itself, a constitutional violation, Cooper makes additional allegations concerning the conditions of confinement at the EJSP facility.  For instance, he complains that he is housed in a prison facility subject to restrictions.  <u>See</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 321-22

---

[3]  Recently, the Supreme Court held constitutional under the Necessary and Proper Clause, a federal statute that allowed a district court to order the civil commitment of a sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released.  <u>United States v. Comstock</u>, No. 08-1224, __ U.S. __, 130 S.Ct. 1949 (May 17, 2010).  Although these civilly committed persons remained confined at a federal prison, namely, FCI Butner, the Court did not address their place of civil confinement as being unconstitutional.

(1982)("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[4] within the bounds of professional discretion, Youngberg, 457 U.S. at 321-22. Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 307. The Constitution is not concerned with de minimis restrictions on patients' liberties. Id. at 320. Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." Seling, 531 U.S. at 265. While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective

---

[4] In Bell v. Wolfish, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. 441 U.S. 520, 535-39, (1979).

reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Cooper's main allegation with respect to the conditions of his confinement relates to his contention that he is now housed in a prison facility and has been treated like a prisoner and subjected to prison rules.  For instance, Cooper complains that he was subjected to a pat search and finger scan after he came in from the yard.  Movement to group sessions are controlled by the prison staff, mail is sent to a different location, and any resident who complains will be placed in MAP status.  Cooper also alleges that the ceiling leaked when it rained all day on May 18, 2010.

The Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme.  See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin v. Conner, 515 U.S. 472 (1995),[5] to segregated confinement of civilly committed SVPs).  See also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise extending Sandin to civil commitment settings).  Thus, Cooper's general allegation that disruptive and agitative residents may be

---

[5]  In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

placed in MAP status, and that general movement is monitored and restricted, without more, fails to articulate a cognizable claim of constitutional magnitude, in light of <u>Deavers</u>.  Cooper fails to allege any facts to show that MAP restrictions and movements within the EJSP facility are unduly extreme and unrelated to the purposes for which such restrictions are imposed.

Additionally, for the following reasons, this Court finds that Cooper's complaints about the mail restrictions, pat searches, and a leaking ceiling, are not extreme conditions of plaintiff's confinement as a civilly committed person, and thus, do not violate due process.

1.  *Unlawful Search Claim*

Cooper alleges that residents are subjected to "pat down" searches when leaving/returning to the STU at EJSP for yard recreation.  In particular, Cooper alleges that he was pat searched and finger scanned on one occasion after returning from the yard.  He asserts that as a civilly committed person, such searches are unconstitutional and violate his rights under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures."  U.S. CONST. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."  <u>Skinner v. Ry. Labor Executives' Ass'n</u>, 489 U.S. 602,

618 (1988)(quoting <u>United States v. Montoya de Hernandez</u>, 473
U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular
practice is judged by balancing its intrusion on the individual's
Fourth Amendment interests against its promotion of legitimate
governmental interests."  <u>Id</u>. at 619 (quotation marks and
internal citation omitted).

In <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984), a prisoner
argued that a cell search conducted to harass him was
unreasonable because a prisoner has a reasonable expectation of
privacy not to have his cell, locker, personal effects, person
invaded for such a purpose.  <u>Id</u>. at 529.  The Supreme Court
rejected the claim because "prisoners have no legitimate
expectation of privacy."  <u>Id</u>. at 530.  The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is
> fundamentally incompatible with the close and continual
> surveillance of inmates and their cells required to ensure
> institutional security and internal order.... [S]ociety
> would insist that the prisoner's expectation of privacy
> always yield to what must be considered the paramount
> interest in institutional security.... [I]t is accepted by
> our society that loss of freedom of choice and privacy are
> inherent incidents of confinement.

<u>Id</u>. at 527-28 (footnotes, citations and internal quotation marks
omitted).  The same conclusion was reached with respect to
pretrial detainees other than convicted prisoners.  <u>See</u> <u>Bell v.</u>
<u>Wolfish</u>, 441 U.S. 520, 558-560 (1979)(finding that a body cavity

searches of pretrial detainees do not violate the Fourth Amendment).[6]

Consequently, involuntarily committed patients and SVPs, like pretrial detainees, are entitled to some protection under the Fourth Amendment, but they do not have an expectation of privacy equal to an individual in society generally.  See Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009)(noting that pretrial detainees are kept in custody because there is cause to believe they are dangerous; similarly, commitment under Minnesota law as a sexually dangerous person requires a finding of dangerousness), cert. denied, 130 S.Ct. 465 (2009); Allison v. Snyder, 332 F.3d 1076-79 (7th Cir. 2003)(SVPs may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not technically be "punished"), cert. denied, 540 U.S. 985 (2003); Aiken v. Nixon, 236 F. Supp.2d 211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003); see also, Jennings v. New York State Office of Mental Health, 786

---

⁶  In Bell v. Wolfish, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body.  In other words, courts must balance the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  441 U.S. 520, 559 (1979); see also Turner v. Safley, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest).

F. Supp. 376, 382, 384 (S.D.N.Y. 1992), <u>aff'd</u>, 977 F.2d 731 (2d Cir. 1992).

Similarly, the United States Court of Appeals for the Ninth Circuit has held that, because SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others, they are subject to "[l]egitimate, non-punitive government interests" such as "maintaining jail security, and effective management of [the] detention facility." <u>Jones v. Blanas</u>, 393 F.3d 918, 932 (9th Cir. 2004). Thus, the reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry. <u>Id</u>.

Here, with respect to his Fourth Amendment claim, Cooper's primary argument appears to be that any prison actions that did not specifically take into account his classification as a SVP is per se a constitutional violation. Applying the balancing test employed by <u>Wolfish</u>, this Court finds that general pat searches conducted on residents entering the yard or returning to the unit from yard time are plainly reasonable and do not violate plaintiff's Fourth Amendment rights. <u>See</u> <u>Semler v. Ludeman</u>, 2010 WL 145275, *19, D. Minn. Jan. 8, 2010)(finding no Fourth Amendment violation where plaintiffs were required to submit to pat searches following gym use and kitchen work assignments that included removal of socks and shoes, opening their mouths, showing their zippers, showing behind their ears and running

20

their fingers through their hair; search was "not highly intrusive" and was "not unlike the scope of searches of the general public at airport security checkpoints). <u>See also</u> <u>Serna v. Goodno</u>, 567 F.3d 944, 955-56 (upholding reasonableness of a facility-wide visual body cavity search after a cell phone case (cell phones considered contraband) was found, because, while invasive, the searches were conducted privately, safely, and professionally, and the facility was reacting to a recurring problem involving contraband cell phones0, <u>cert</u>. <u>denied</u>, 130 S. Ct. 465 (Oct. 20, 2009).

Moreover, there are no allegations that the guards conducted any pat search in a menacing or degrading manner. Cooper does not allege that there was physical force used or that the search was done in a menacing manner. <u>See</u> <u>Kitchens v. Mims</u>, 2010 WL 1240980 (E.D.Cal. March 25, 2010). Furthermore, there is no allegation or evidence to show that the pat search was conducted solely for punitive purposes.

Therefore, based on all of these factors, this Court will dismiss Cooper's Fourth Amendment unlawful search claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a cognizable claim under § 1983.

2.  *Interference With Mail*

Next, Cooper seems to complain that his mail must be sent to Avenel rather than directly to the EJSP unit where he is confined. The Court perceives this claim as asserting a

violation of plaintiff's First Amendment rights.  However, Cooper
does not indicate that he has not received mail or packages, or
that his mail has been opened outside his presence.

As a general rule, inmates have a limited liberty interest
in their mail under the First and Fourteenth Amendments.  Jones
v. Brown, 461 F.3d 353, 358 (3d Cir. 2006), cert. denied, 549
U.S. 1286 (2007).[7]  However, an inmate's constitutional right to
send and receive mail may be restricted for legitimate
penological interests.  See Thornburgh v. Abbott, 490 U.S. 401,
407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  In Turner,
the Supreme Court of the United States found that a prison
regulation infringing on an inmate's constitutional rights is
valid so long as it is reasonably related to a legitimate
penological interest.  Id. at 89.  The Court established a

_____

[7]  In Jones v. Brown, the United States Court of Appeals for
the Third Circuit held that the legal mail policy of state prison
in opening legal mail outside the presence of the inmate violated
the inmate's First Amendment right to freedom of speech, and was
not reasonably related to prison's legitimate penological
interest in protecting health and safety of prisoners and staff.
461 F.3d at 358.  The Third Circuit also has held that "a pattern
and practice of opening properly marked incoming court mail
outside an inmate's presence infringes communication protected by
the right to free speech.  Such a practice chills protected
expression and may inhibit the inmate's ability to speak,
protest, and complain openly, directly, and without reservation
with the court."  Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir.
1995) (applying the Turner analysis), implied overruling on other
grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d
Cir. 1997).  Thus, the assertion that legal mail is intentionally
opened and read, delayed for an inordinate period of time, or
stolen may state a First Amendment claim.  See, e.g., Antonelli
v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v.
Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).

balancing test pursuant to which courts analyze prohibitions on prisoners' exercise of their constitutional rights by considering the following four factors: (1) whether prohibiting an inmate from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives available that continue to serve the prison's interest without impinging constitutional rights. Turner, 482 U.S. at 89-91.  The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  Id.

The United States Court of Appeals for the Third Circuit has applied Turner in analyzing constitutional claims by civilly committed SVPs.  See Rivera v. Rogers, 224 Fed. Appx. 148, 2007 WL 934413 (3d Cir. March 29, 2007)(applying Turner in analyzing claims of SVPs that opening of their packages violated their First Amendment rights).  Other courts likewise have applied Turner when analyzing claims brought by civilly committed SVPs alleging First Amendment violations.[8]  See Willis v. Smith, 2005

_____

[8]  Essentially, the First Amendment analysis under Turner mirrors the due process analysis under Youngberg; in both instances, courts must balance the constitutional interests of confined persons against the legitimate interests of the state-run institution in which they reside.  See Beaulieu v. Ludeman,

23

WL 550528 (N.D. Iowa Feb. 28, 2005)(noting that status of SVPs was substantially similar to that of prisoners and applying Turner to SVP claims concerning mail handling procedures); Ivey v. Mooney, 2008 WL 4527792, at *4 n. 7 (D. Minn. Sept. 30, 2008)(applying Turner, but noting that a civil confinement is significantly different from a criminal confinement); Francis v. Watson, 2006 WL 2716452, at *3 (D.S.C. Sept. 22, 2006)(citing cases that have applied Turner in cases involving civilly confined persons); Marsh v. Liberty Behavioral Health Care, Inc., 2008 WL 821623, at *5 (M.D. Fla. Mar. 27, 2008), aff'd 330 Fed. Appx. 179 (11th Cir. 2009); Beaulieu v. Ludeman, 2008 WL 2498241, at *20 (D. Minn. June 18, 2008).

In Rivera, the Third Circuit affirmed the district court's ruling that a facility housing civilly committed SVPs has a legitimate interest in both the safety of its facility and the rehabilitation of its patients. Rivera, 224 Fed. Appx. at 151 (citing Waterman v. Farmer, 183 F.3d 208, 215 (3d Cir. 1999)("[I]t is beyond dispute that New Jersey has a legitimate penological interest in rehabilitating its most dangerous and compulsive sex offenders.")). Specifically, the court upheld as constitutional the STU's policy that allows staff to open packages not marked as "legal mail" to assure that the packages

---

2008 WL 2498241, at *20 n. 15 (finding Turner to be consistent with Youngberg because "it will not allow a Program detainee's right to be restricted unless there is a valid institutional reason for doing so").

do not contain contraband (_i.e._, items either harmful to staff
and residents, or detrimental to rehabilitation).  The court
found that plaintiff was free to send and receive mail so long as
the content of his mail was not sexually explicit.  Moreover, the
Third Circuit found no error in the district court's conclusion
that there were no ready alternatives to mail security and that
the STU's policy appeared to be the only viable alternative, thus
supporting the reasonableness of the mail policy.  _Rivera_, 224
Fed. Appx. at 151.

Here, this Court likewise finds that it is beyond dispute
that the staff at EJSP, where plaintiff and other SVP residents
are newly housed, has a legitimate interest in both the safety of
its facility and rehabilitating its patients.  As noted above,
these civilly committed persons are convicted sexual predators,
which makes safety at EJSP a very important concern.  The staff
clearly must determine if any items coming through the mail pose
a threat to the safety of the staff or the other residents.  They
also must decide if any of the materials passing through the mail
could be detrimental to a resident's therapy.  Consequently, as
set forth by the Supreme Court and the Third Circuit, the Court
must defer to the prison officials when it comes to issues of
managing a safe and operational prison facility.  In this case,
delivery of letters and packages at the Avenel facility located
close by, where the staff is trained with respect to SVP issues
unlike the general NJDOC staff at EJSP, assures that harmful

materials are not being passed through the mail, but also allows for specialized treatment regarding SVP residents.  This new policy, which appears to be preliminarily instituted because of the recent transfer of the SVP residents to EJSP, clearly bears a rational relationship to both interests discussed above.

Moreover, in his interference with the mail claim, Cooper alleges no actual incident of interference with his mail.  Courts have held that a single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).  Thus, the only continuing complaint seems to be that his mail is sent to another facility instead of EJSP where he now resides.  Cooper does not articulate a claim that prison officials are intentionally delaying or opening his mail.  Accordingly, this claim will be dismissed for failure to state a cognizable federal constitutional deprivation.

3.  *Leaking Ceiling Claim*

Finally, Cooper alleges that his unit had a leaking ceiling on May 18, 2010, after it had rained.  He does not contend that this single condition was intended as punishment, or that he has suffered adversely from the alleged condition.  Based on this general allegation, even if true, the Court finds no atypical or significant deprivation that would rise to the level of a constitutional violation at this time.

Therefore, with respect to his conditions claims as alleged, this Court finds that Cooper has failed to state a cognizable claim in this regard at this time, and the alleged conditions of confinement claims will be dismissed accordingly.  To the extent that Cooper can allege additional facts to show that unconstitutional conditions of confinement exist, he may seek leave to re-open this case and file an amended pleading.[9]

C.   <u>Access to Law Library Claim</u>

This Court next considers plaintiff's allegations that he has been denied access to the courts (via denial of access to the law library) in violation of his First and Fourteenth Amendment rights.  Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[10]

---

[9]   Should plaintiff so choose to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>Id.</u>

[10]   The right of access to the courts is an aspect of the First Amendment right to petition.  <u>McDonald v. Smith</u>, 472 U.S. 479, 482 (1985); <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he

The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are

---

constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  <u>See</u>, <u>e.g.</u>, <u>May v. Sheahan</u>, 226 F.3d 876, 883-84 (7th Cir. 2000); <u>Caldwell v. Hall</u>, 2000 WL 343229 (E.D. Pa. March 31, 2000).  <u>But see</u> <u>United States v. Byrd</u>, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); <u>United States v. Walker</u>, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  <u>See</u> <u>Lewis</u>, 518 U.S. at 348-51, 354-55 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement

29

which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Here, Cooper fails to allege any actual injury as a result of the alleged denial of access to the law library.  He does not allege that he was unable to file this or any other complaint in the courts, and in fact, he has not been limited in filing the instant action in this federal court.  Consequently, the allegations in the Complaint are too conclusory to show a denial of court access sufficient to rise to the level of a constitutional deprivation under the Iqbal pleading standard. "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation .... Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Iqbal, 129 S.Ct. at 1949 (citations and internal quotation marks omitted).

Furthermore, Cooper does not articulate how the alleged denial of access to the law library has hindered his efforts to either pursue this claim or defend himself in any pending state proceedings.  Therefore, his claim alleging denial of access to the courts based on an alleged failure to provide access to the

law library will be dismissed for failure to state a claim at
this time.

D.   Denial of Treatment Claim

Cooper also asserts that his therapy/treatment sessions have
been disrupted or denied because of the prison setting and
control by NJDOC officials over movements and conduct of the
residents in the EJSP-STU.   In particular, Cooper alleges that he
has been restricted from participating in therapy and treatment
sessions, and that his "mental support" is housed elsewhere at
the EJSP-STU.   Thus, Cooper appears to argue that he is denied
the right to adequate treatment and reasonable care applicable to
civilly committed SVPs, in violation of the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution,
§ 1, guarantees that "[n]o State shall ... deprive any person of
life, liberty, or property, without due process of law."   This
due process guarantee has been interpreted to have both
procedural and substantive components, the latter which protects
fundamental rights that are so "implicit in the concept of
ordered liberty" that "neither liberty nor justice would exist if
they were sacrificed."   Palko v. Conn., 302 U.S. 319, 325 (1937).
These fundamental rights include those guaranteed by the Bill of
Rights, as well as certain liberty and privacy interests
implicitly protected by the Due Process Clause, such as the right
to marry.   Washington v. Glucksberg, 521 U.S. 702, 720 (1997).
Substantive due process also protects against government conduct

that is so egregious that it "shocks the conscience," even where the conduct does not implicate any specific fundamental right. See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny and will be upheld if they are "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). However, regulations not implicating fundamental rights (in other words, those claims attacking particularly egregious or arbitrary governmental actions) are analyzed under the deferential standard referred to as the rational basis review, and will generally succeed only if the government action shocks the conscience. See Glucksberg, 521 U.S. at 728.

With respect to Cooper's claim, it appears that he is asserting that he has a fundamental right to adequate treatment as a civilly committed sex offender, and that as a result of the prison setting he is not being afforded adequate treatment. The Supreme Court established that there exists a constitutionally protected right of mentally retarded persons confined at a state institution to minimally adequate treatment. Specifically, the Supreme Court held that there is a constitutional right of mentally disabled persons confined at a state institution to "minimally adequate habilitation", self-care treatment or training to the extent necessary to protect their recognized fundamental rights to safety and freedom from physical restraints. Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of the individual and the demands of an organized society" to determine whether such right has been violated.  Youngberg, 457 U.S. at 320.  Although restrictions burdening a fundamental right generally receive strict scrutiny, in Youngberg, the Supreme Court found that this sort of rigorous analysis would unduly burden the ability of states, specifically their professional employees, to administer mental health institutions.  Id. at 322. Consequently, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment was in fact exercised," because "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made."  Id. at 321 (internal quotation and citation omitted).  Thus, a decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment."  Id. at 323.

In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental

33

and cognizable liberty interest in treatment, for purposes of
both procedural and substantive due process analyses.  288 F.3d
at 545.  Leamer was not a civilly committed sex offender like
plaintiff here.  Rather, Leamer was a convicted sex offender
whose confinement and treatment were inextricably linked pursuant
to statute.  The sentencing court had classified Leamer as having
a "mental aberration" and in need of "specialized treatment,"
which automatically subjected Leamer to the maximum incarceration
permitted by law unless he is cured prior to that point.  Leamer
could not reduce his sentence through good behavior credits,
parole policies or other credits.  Instead, he could only shorten
his incarceration through successful therapy, which was an
"inherent and integral element" of the statutory scheme.
Consequently, the Third Circuit found that deprivation of
treatment would be a grievous loss not emanating from the
sentence.  Leamer, 288 F.3d at 544.

    Apart from that recognized in Youngberg to prevent the
violation of recognized fundamental rights to safety and freedom
from physical restraints, this Court finds the Third Circuit's
holding in Leamer to clearly extend to an involuntarily committed
sex offender under New Jersey's SVPA.  Like Leamer, the length of
Cooper's confinement under the SVPA is predicated on his response
to treatment.  Indeed, the provisions of the SVPA explicitly
recognize New Jersey's obligation to provide treatment to SVPs
for their eventual release based on successful therapy.  See

34

N.J.S.A. 30:4-27.32(a)("If the court finds by clear and
convincing evidence that the person needs continued involuntary
commitment as a sexually violent predator, it shall issue an
order authorizing the involuntary commitment of the person to a
facility designated for the custody, care and **treatment** of
sexually violent predators")(emphasis added); N.J.S.A. 30:4-
34(b)("The Division of Mental Health Services in the Department
of Human Services shall provide or arrange for treatment for a
person committed pursuant to this act.  Such treatment shall be
appropriately tailored to address the specific needs of sexually
violent predators."); N.J.S.A. 30:4-27.36(a)(At any time during
the involuntary commitment of a person under this act, if the
person's treatment team determines that the person's mental
condition has so changed that the person is not likely to engage
in acts of sexual violence if released, the treatment team shall
recommend that the Department of Human Services authorize the
person to petition the court for discharge from involuntary
commitment status"); see also Kansas v. Hendricks, 521 U.S. 346,
367 (1997)(concluding from similarly-worded provisions of Kansas
SVP Act that "the State has a statutory obligation to provide
'care and treatment for [persons adjudged sexually dangerous]
designed to effect recovery ....")(alterations in
original)(internal citations omitted).

        Therefore, based on Youngberg and Leamer, this Court
concludes that Cooper may have a fundamental liberty interest in
treatment, but has not stated a cognizable claim at this time for

purposes of both procedural and substantive due process analyses. See Bailey v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991), cert. denied, 503 U.S. 952 (1992)(where the Eighth Circuit noted that Youngberg did not establish a right for the civilly committed to treatment per se; the Supreme Court only "held that the Constitution required only such 'minimally adequate training ... as may be reasonable in light of [the] liberty interest[ ] in safety and freedom from unreasonable restraints.'")(quoting Youngberg, 457 U.S. at 322).  In Bailey, the Eighth Circuit concluded that plaintiff had no right to "psychiatric treatment to overcome a 'sexual offender condition'"  because he "was neither in danger during his civil commitment nor was he subject to any restraints beyond the ordinary incidents of any involuntary confinement."  Id. at 1153, 1154.  Citing Bailey, district courts in the Eighth Circuit have since concluded that civilly committed sexual predators have no substantive due process right to mental health treatment, adequate or otherwise. See Semler v. Ludeman, 2010 WL 145275, at *26 (D. Minn. Jan. 8, 2010)("Because this Court has not recognized a constitutional right to effective 'treatment' in the context of civilly committed sex offenders, Plaintiffs [alleging substantive due process violations through ineffective treatment] have failed to allege a due process claim ....")(citing Nicolaison v. Ludeman, 2008 WL 508549, at *8 (D. Minn. Feb. 11, 2008)(finding, in ultimately concluding that involuntarily committed sex offender's right to treatment is not "clearly established" for purposes of

28 U.S.C. § 2254(d)(1), that <u>Youngberg</u> "only recognized a right to 'minimally adequate' treatment that reduces the need for restraints," and not a "comparable right to treatment that facilitates release")).

Indeed, based on the allegations and admissions by plaintiff in his Complaint, Cooper fails to show any procedural or substantive due process violations at this time. He does not demonstrate a categorical denial of therapy and treatment sessions due to the prison setting in which he receives his treatment. Rather, his complaints more aptly demonstrate his personal dissatisfaction with a treatment plan that has plaintiff separated from his preferred "mental support" group. Moreover, Cooper admits that he was placed on treatment probation because he has missed sessions, although Cooper does not fully concede that he himself has been uncooperative. Rather, it appears from the allegations that Cooper merely is complaining that the NJDOC group movement causes him to be frustrated and miss group sessions. Thus, there simply is no evidence other than Cooper's bald allegation that his treatment and group therapy sessions are curtailed as punishment for filing grievances or complaining.

In <u>Leamer</u>, the Third Circuit, relying on <u>Sandin</u>, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest. <u>Leamer</u>, 288 F.3d at 546.

Similarly, in the instant case, although Cooper and other
disruptive and agitative residents may be placed in MAP status in
response to their behavior or uncooperation, there is no
indication from the allegations here that these residents have
been or will be denied treatment.

Indeed, there are no factual allegations of an absolute
denial of treatment.  Cooper merely alleges that prison staff
regulate movement and conduct searches and other policy measures
for the orderly running and security of the EJSP facility as a
whole, which Cooper feels affects his access to the  treatment
sessions of his choice.  He does not allege that he has been
denied treatment altogether.  Further, Cooper recites legal
conclusions in his complaint about being made to feel like a
"prisoner" rather than a civilly committed person rather than
allege any facts to support a claim that he has been denied
treatment.  Indeed, he seems mostly fixated on the idea of being
in a "prison setting" and does not allege any real disruption or
interference with his treatment, other than controlled movements
in the EJSP facility, which on its own, does not curtail group
therapy.

This Court likewise finds no substantive due process
violation at this time.  Substantive due process prevents the
government from engaging in conduct that "shocks the conscience,"
or interferes with rights "implicit in the concept of ordered
liberty."  <u>Glucksberg</u>, 521 U.S. at 721.  Under this standard,
Defendants' actions in denying Cooper his statutory right to

treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the conscience.  See Leamer, 288 F.3d at 546-47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

Here, as demonstrated above, defendants have not categorically declined to provide any mental health treatment to Cooper.  Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Cooper's substantive due process rights.  Indeed, plaintiff's allegations, as set forth above, are merely conclusory and factually unsubstantiated.  Cooper has not shown any disruption of treatment.  Instead, he simply objects to the manner and place in which treatment and sessions are provided.

Thus, the Court concludes that treatment has not been denied to Cooper, as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged.  Further, this Court concludes that the allegations asserted in Cooper's Complaints do not show such egregious conduct or disruption as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, based on the facts as alleged in the Complaint, Cooper's claim alleging inadequate treatment will be dismissed for failure to state a cognizable claim of a deprivation of a constitutional right.

E.   Harassment Claim

Cooper further complains that he is being verbally harassed by the correctional officers.  Namely, on August 25, 2010, while plaintiff was in the yard, he alleges that he was verbally harassed by correctional officers.

Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner. See Jean-Laurent v. Wilkerson, 438 F. Supp.2d 318, 324-25 (S.D.N.Y. 2006)(pretrial detainee's claim of verbal abuse not cognizable under § 1983 because verbal intimidation did not rise to the level of a constitutional violation); Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996)(threats and verbal harassment without physical injury or damage not cognizable in claim filed by sentenced inmate under § 1983).  See also Price v. Lighthart, 2010 WL 1741385 (W.D. Mich. Apr. 28, 2010); Glenn v. Hayman, 2007 WL 894213, *10 (D.N.J. Mar. 21, 2007); Stepney v. Gilliard, 2005 WL 3338370 (D.N.J. Dec. 8, 2005)("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone ... no matter how inappropriate, unprofessional, or reprehensible it

40

might seem,' does not constitute the violation of any federally
protected right and therefore is not actionable under [Section]
1983") (quoting Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474
(S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp.2d
241, 244 (D.Me. 2005)).  See also Moore v. Morris, 116 Fed. Appx.
203, 205 (10th Cir. 2004)(mere verbal harassment does not give
rise to a constitutional violation, even if it is inexcusable and
offensive, it does not establish liability under section 1983),
cert. denied, 544 U.S. 925 (2005); Collins v. Cundy, 603 F.2d
825, 827 (10th Cir. 1979) (dismissing prisoner's claim that
defendant laughed at prisoner and threatened to hang him);
Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89
(D.N.J. 1993)); Abuhouran v. Acker, 2005 WL 1532496 (E.D. Pa.
June 29, 2005)("It is well established ... that ... verbal
harassment, ... standing alone, do[es] not state a constitutional
claim")(citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir.
1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999);
Maclean v. Secor, 876 F. Supp. 695, 698 (E.D.Pa. 1995)).  See
also Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)
(holding that verbal harassment and abuse are not recoverable
under § 1983); Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.
1987)(holding that racially derogatory remarks, although
"unprofessional and inexcusable," are not "a deprivation of
liberty within the meaning of the due process clause").

     Here, Cooper does not allege an accompanying violation that
might allow the unidentified verbal harassment to state a

separate due process violation or equal protection claim.  At most, Cooper alleges that he was humiliated and made to feel like a prisoner, causing him to be "mental degraded" as a result of the verbal harassment.  These general allegations of "injury" are nothing more than the mere recitation of a legal conclusion without factual allegations sufficient at this time to support a claim that the defendants were verbally harassing plaintiff as a form of punishment.  Consequently, because the alleged verbal harassment of Cooper was not accompanied by any injurious actions - or physical actions of any kind - by the correction officials, Cooper fails to state a cognizable § 1983 claim for a violation of his Fourteenth Amendment due process or Fourteenth Amendment equal protection rights, and his claim will be dismissed accordingly.

F.  Preliminary Injunction

     Finally, Cooper brings an application for a preliminary injunction to prevent defendants from retaliating against him by confiscating his legal materials or placing him in MAP for bringing this action.

     To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants]; and (4) granting the injunction is in the public interest."  Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130

(1999)(as to a preliminary injunction); see also Ballas v. Tedesco, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order).  A plaintiff must establish that all four factors favor preliminary relief.  Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990). The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction.  See University of Texas v. Camenisch, 451 U.S. 390, 392 (1981).

Here, the claims asserted in this Complaint are being dismissed for failure to state a claim at this time. Accordingly, Cooper has not alleged facts sufficient to satisfy the first requirement that he may be likely to succeed on the merits.  Moreover, Cooper fails to articulate irreparable harm, and thus, cannot satisfy the second mandatory requirement.

Therefore, because Cooper is unable to establish all four factors necessary for preliminary injunctive relief as required, his application for preliminary injunctive relief must be denied at this time.

V.   CONCLUSION

For the reasons set forth above, plaintiff's Complaint will be dismissed without prejudice, in its entirety as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff may seek

leave to re-open this case to file an amended pleading to the extent he can allege facts to cure the deficiencies noted herein. Finally, his application for a preliminary injunction (docket entry no. 2) will be denied as moot.  An appropriate order follows.


s/Faith S. Hochberg
FAITH S. HOCHBERG
United States District Judge