<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
ELY COOPER,                        :
                                   :  Civil Action No. 10-5245 (FSH)
               Plaintiff,          :
                                   :
                                   :
               v.                  :  **OPINION**
                                   :
KENNETH SHARP, et al.,             :
                                   :
               Defendants.         :
```

**APPEARANCES:**

> ELY COOPER, Plaintiff <u>pro se</u>
> #193
> East Jersey State Prison, Special Treatment Unit
> CN 905, 8 Production Way
> Avenel, New Jersey 07001

**HOCHBERG**, District Judge

Plaintiff, Ely Cooper, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24, <u>et</u> <u>seq.</u>, seeks to re-open this action that was dismissed without prejudice by Opinion and Order entered by this Court on March 23, 2011. (<u>See</u> Docket entry nos. 3 and 4). Plaintiff submitted his amended Complaint on April 4, 2011. (Docket entry no. 6). Plaintiff was granted <u>in</u> <u>forma</u> <u>pauperis</u> status in this action on March 23, 2011.

At this time, the Court must review the amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether the action should be dismissed as frivolous or malicious, for failure

to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that this action should be allowed to proceed in part.

## I.  BACKGROUND

Plaintiff, Ely Cooper ("Cooper"), brings this amended civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Merril Main, Clinical Director at East Jersey State Prison, Special Treatment Unit ("EJSP-STU"); Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Shantay Brame Adams, Assistant Director of the EJSP-STU; Jacylen Ottino, Program Coordinator at the EJSP-STU; Steve Johnson, Assistant Superintendent at EJSP-STU; Mark Singer, Assistant Attorney General for the State of New Jersey; and David Dacosta, Assistant Attorney General for the State of New Jersey.  (Complaint, Caption and ¶¶ 4b-4h).  The following factual allegations are taken from the amended Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

In his Complaint, Cooper generally alleges that defendants have either  authorized or condoned the New Jersey Department of Corrections to place plaintiff, a civilly committed resident, on prison grounds and under prison policy and guidelines in violation of his constitutional rights.  (Compl., ¶¶ 4b-4h).

2

Plaintiff further complains that there is "no proper treatment, no modules, no outside programs or anything that will show advancement in treatment."  (Compl., ¶ 4b).

In particular, Cooper alleges that, on September 16, 2010, the Director of Psychology stated that the EJSP-STU is a non-therapeutic environment because of the prison setting.  Cooper also alleges that, on October 21, 2010, he overheard Sgt. Smith tell SCO Banks that "that's what happens when a celebrity is on the tier," meaning cancellation of therapy groups and unit searches.  Cooper alleges that he complained about the continuous disruptions of therapy group movements on November 22, 2010. (Compl., ¶ 6).

On November 27, 2010, Cooper alleges that he was strip searched after his "p.m. visits" and was told the search was under prison policy, even though plaintiff is a civilly committed person.  (Id.).

Cooper further alleges that from May 12, 2010 to April 30, 2011, he "was denied all group/therapy."  (Compl., ¶ 7).  He asks to be transferred to a better staff facility in a civil commitment unit and to be compensated for any pain and mental humiliation.  (Id.).

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action where the litigant is proceeding in forma pauperis.

Specifically, the court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B). Accordingly, because Cooper is proceeding in forma pauperis in this matter, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a

4

complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting
<u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief." <u>Fed.
> Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

<u>Iqbal</u>, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the

---

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  See Phillips,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this

pro se pleading must be construed liberally in favor of

Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to

amend, unless it finds bad faith, undue delay, prejudice or

futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-

111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.

2000).

### III.   SECTION 1983 ACTIONS

Cooper brings this action pursuant to 42 U.S.C. § 1983.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 *et seq.*, provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous

civil commitment framework and additionally separate SVPs from
other persons who have been civilly committed.  Id.  The SVPA
defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent
> or found not guilty by reason of insanity for commission of
> a sexually violent offense, or has been charged with a
> sexually violent offense but found to be incompetent to
> stand trial, and suffers from a mental abnormality or
> personality disorder that makes the person likely to engage
> in acts of sexual violence if not confined in a secure
> facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual
review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released
from involuntary civil commitment upon recommendation of the DHS
or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

V.   ANALYSIS

A.  Prison Facility Claim

Cooper is attempting to relitigate his initial claim that
his transfer to a prison facility, as a civilly committed person
under the SVPA, is unconstitutional because he is subject to the
prison policies in place for the orderly operation and security
of a prison facility.  This claim was dismissed with prejudice by
this Court's March 23, 2011 Opinion and Order.

In particular, this Court stated:

> In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme
> Court examined the conditions of confinement provided by
> Kansas' Sexually Violent Predator Act.  The Act called for
> the confinement of sexually violent predators in a secure
> facility because they were dangerous to the community.  Id.,
> 521 U.S. at 363-64.  Pertinent here, the Supreme Court was

10

aware that the sexually violent predators in Kansas were to
be held in a segregated unit within the prison system.
However, the Court noted that the conditions within the unit
were essentially the same as conditions for other
involuntarily committed persons in mental hospitals.
Moreover, confinement under the Act was not necessarily
indefinite in duration, and the Act provided for treatment.
Id., 521 U.S. at 363, 364, 365-368.  Thus, the Supreme
Court held that involuntary confinement under Kansas' SVPA was not
unconstitutional so long as such civilly-confined persons
are segregated from the general prison population and
afforded the same status as others who have been civilly
committed.  Id., 521 U.S. at 368-69.  See also Seling v.
Young, 531 U.S. 250, 261062 (2001)(holding same with respect
to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the
Kansas and Washington SVP statutes that were examined and
upheld as constitutional by the Supreme Court in Hendricks
and Seling, respectively.[3]  See Bagarozy v. Goodwin, Civil
Action No. 08-468 (SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept.
23, 2008); In re Commitment of W.Z., 173 N.J. 109, 801 A.2d
205, 211 (2002).  Therefore, this Court finds that Cooper's
placement and confinement in a Special Treatment Unit for
SVP residents that is a segregated unit in the East Jersey
State Prison, does not, in and of itself, violate the U.S.
Constitution's Due Process Clause or the Eighth Amendment's
prohibition against cruel and unusual punishment.
Accordingly, Cooper's claim that his continued confinement
in a segregated unit within a prison facility is
unconstitutional must be dismissed for failure to state a
cognizable claim of a constitutional deprivation.

(March 23, 2011 Opinion at pp. 12-14).

    Therefore, Plaintiff's reassertion of this claim in his

amended Complaint will be dismissed accordingly.

_____

    [3]  Recently, the Supreme Court held constitutional under the
Necessary and Proper Clause, a federal statute that allowed a
district court to order the civil commitment of a sexually
dangerous federal prisoner beyond the date the prisoner would
otherwise be released.  United States v. Comstock, No. 08-1224,
__ U.S. __, 130 S.Ct. 1949 (May 17, 2010).  Although these
civilly committed persons remained confined at a federal prison,
namely, FCI Butner, the Court did not address their place of
civil confinement as being unconstitutional.

B.  <u>Conditions of Confinement Claim</u>

    Although plaintiff's placement in a segregated unit within a
prison facility is not, in and of itself, a constitutional
violation, Cooper makes additional allegations concerning the
conditions of confinement at the EJSP facility.  For instance, he
complains that he is housed in a prison facility subject to
restrictions.  <u>See</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 321-22
(1982)("Persons who have been involuntarily committed are
entitled to more considerate treatment and conditions of
confinement than criminals whose conditions of confinement are
designed to punish.").

    Generally, the Fourteenth Amendment requires that civilly
committed persons not be subjected to conditions that amount to
punishment, <u>Bell v. Wolfish</u>, 441 U.S. 520, 536 (1979),[4] within
the bounds of professional discretion, <u>Youngberg</u>, 457 U.S. at
321-22.  Specifically, in <u>Youngberg</u>, the Supreme Court held that
civilly committed persons do have constitutionally protected
interests, but that these rights must be balanced against the
reasons put forth by the State for restricting their liberties.
<u>Id</u>. at 307.  The Constitution is not concerned with <u>de</u> <u>minimis</u>
restrictions on patients' liberties.  <u>Id</u>. at 320.  Moreover, "due

_____

     [4]  In <u>Bell v. Wolfish</u>, the Supreme Court held that whether a
condition of confinement of pretrial detainees violated their
constitutional rights turns on whether the disability is imposed
for the purpose of punishment or whether it is but an incident of
some other legitimate government purpose.  441 U.S. 520, 535-39,
(1979).

process requires that the conditions and duration of confinement
[for civilly confined persons] bear some reasonable relation to
the purpose for which persons are committed." <u>Seling</u>, 531 U.S.
at 265.  While the nature of an SVP's confinement may factor in
this balance of what is reasonable, it is clearly established
that the substantive due process protections of the Fourteenth
Amendment apply to SVPs. See <u>Andrews v. Neer</u>, 253 F.3d 1052, 1061
(8th Cir. 2001)(applying the Fourteenth Amendment's "objective
reasonableness" standard to excessive force claims brought by
civilly committed SVPs).

Cooper's main allegation with respect to the conditions of
his confinement relates to his contention that he is now housed
in a prison facility and has been treated like a prisoner and
subjected to prison rules.  For instance, Cooper complains that
he was subjected to a strip search after returning from "p.m.
visits."  Movement to group sessions are controlled by the prison
staff, and any resident who complains will be placed in MAP
status.

The Third Circuit has held that placement of a civilly
committed SVP in segregated confinement does not violate due
process unless the deprivation of liberty is in some way extreme.
See <u>Deavers v. Santiago</u>, 243 Fed. Appx. 719, 721 (3d Cir.
2007)(applying <u>Sandin v. Conner</u>, 515 U.S. 472 (1995),[5] to

_____

        [5]  In <u>Sandin</u>, the Supreme Court held that there was no
cognizable liberty interest in freedom from additional restraint
in a prison setting.  <u>See</u> 515 U.S. at 486 ("We hold that [the
prisoner's] discipline in segregated confinement did not present

segregated confinement of civilly committed SVPs).  See also
Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise
extending Sandin to civil commitment settings).  Thus, Cooper's
general allegation that disruptive and agitative residents may be
placed in MAP status, and that general movement is monitored and
restricted, without more, fails to articulate a cognizable claim
of constitutional magnitude, in light of Deavers.  Cooper fails
to allege any facts to show that MAP restrictions and movements
within the EJSP facility are unduly extreme and unrelated to the
purposes for which such restrictions are imposed.

Additionally, for the following reasons, this Court finds
that Cooper's single strip search is not an extreme condition of
plaintiff's confinement as a civilly committed person, and thus,
does not violate due process.

Here, Cooper alleges that he was subjected to a single strip
search on November 27, 2010, when he returned to his unit after
"p.m. visits."  He asserts that as a civilly committed person,
such searches are unconstitutional and violate his rights under
the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to
be secure in their persons ... against unreasonable searches and
seizures."  U.S. CONST. amend. IV.  Reasonableness under the
Fourth Amendment "depends on all of the circumstances surrounding
the search or seizure and the nature of the search or seizure

the type of atypical, significant deprivation in which a State
might conceivably create a liberty interest.").

14

itself." <u>Skinner v. Ry. Labor Executives' Ass'n</u>, 489 U.S. 602, 618 (1988)(quoting <u>United States v. Montoya de Hernandez</u>, 473 U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." <u>Id</u>. at 619 (quotation marks and internal citation omitted).

In <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose. <u>Id</u>. at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." <u>Id</u>. at 530.  The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.... [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.... [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

<u>Id</u>. at 527-28 (footnotes, citations and internal quotation marks omitted).  The same conclusion was reached with respect to pretrial detainees other than convicted prisoners. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 558-560 (1979)(finding that a body cavity

15

searches of pretrial detainees do not violate the Fourth Amendment).[6]

Consequently, involuntarily committed patients and SVPs, like pretrial detainees, are entitled to some protection under the Fourth Amendment, but they do not have an expectation of privacy equal to an individual in society generally.  See Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009)(noting that pretrial detainees are kept in custody because there is cause to believe they are dangerous; similarly, commitment under Minnesota law as a sexually dangerous person requires a finding of dangerousness), cert. denied, 130 S.Ct. 465 (2009); Allison v. Snyder, 332 F.3d 1076-79 (7th Cir. 2003)(SVPs may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not technically be "punished"), cert. denied, 540 U.S. 985 (2003); Aiken v. Nixon, 236 F. Supp.2d 211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003); see also, Jennings v. New York State Office of Mental Health, 786

---

[6]   In Bell v. Wolfish, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body.  In other words, courts must balance the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  441 U.S. 520, 559 (1979); see also Turner v. Safley, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest).

F. Supp. 376, 382, 384 (S.D.N.Y. 1992), aff'd, 977 F.2d 731 (2d Cir. 1992).

Similarly, the United States Court of Appeals for the Ninth Circuit has held that, because SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others, they are subject to "[l]egitimate, non-punitive government interests" such as "maintaining jail security, and effective management of [the] detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004).  Thus, the reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry.  Id.

Here, with respect to his Fourth Amendment claim, Cooper's primary argument appears to be that any prison actions that did not specifically take into account his classification as a SVP is per se a constitutional violation.  Applying the balancing test employed by Wolfish, this Court finds that general pat searches conducted on residents entering the yard or returning to the unit from yard time are plainly reasonable and do not violate plaintiff's Fourth Amendment rights.  See Semler v. Ludeman, 2010 WL 145275, *19, D. Minn. Jan. 8, 2010)(finding no Fourth Amendment violation where plaintiffs were required to submit to pat searches following gym use and kitchen work assignments that included removal of socks and shoes, opening their mouths, showing their zippers, showing behind their ears and running

their fingers through their hair; search was "not highly intrusive" and was "not unlike the scope of searches of the general public at airport security checkpoints). <u>See also</u> <u>Serna v. Goodno</u>, 567 F.3d 944, 955-56 (upholding reasonableness of a facility-wide visual body cavity search after a cell phone case (cell phones considered contraband) was found, because, while invasive, the searches were conducted privately, safely, and professionally, and the facility was reacting to a recurring problem involving contraband cell phones0, <u>cert</u>. <u>denied</u>, 130 S. Ct. 465 (Oct. 20, 2009).

Here, there are no allegations that the guards conducted the strip search in a menacing or degrading manner.  Cooper does not allege that there was physical force used or that the search was done in a menacing manner.  <u>See</u> <u>Kitchens v. Mims</u>, 2010 WL 1240980 (E.D.Cal. March 25, 2010).  Furthermore, there is no allegation or evidence to show that the strip search was conducted solely for punitive purposes.

Therefore, based on all of these factors, this Court will dismiss with prejudice Cooper's Fourth Amendment unlawful strip search claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a cognizable claim under § 1983.

C.  <u>Denial of Treatment Claim</u>

Cooper also now asserts that his therapy/treatment sessions have been denied because of the prison setting and control by NJDOC officials over movements and conduct of the residents in

18

the EJSP-STU.  In particular, Cooper alleges that he has been
denied "all groups/therapy" from May 12, 2010 (when he arrived at
the EJSP-STU) to April 30, 2011 (when he filed his amended
Complaint).  This claim is construed as a violation of
plaintiff's Fourteenth Amendment rights.  In considering this
claim in Cooper's first action that was dismissed without
prejudice, this Court held:

> The Fourteenth Amendment to the United States Constitution,
> § 1, guarantees that "[n]o State shall ... deprive any
> person of life, liberty, or property, without due process of
> law."  This due process guarantee has been interpreted to
> have both procedural and substantive components, the latter
> which protects fundamental rights that are so "implicit in
> the concept of ordered liberty" that "neither liberty nor
> justice would exist if they were sacrificed."  Palko v.
> Conn., 302 U.S. 319, 325 (1937).  These fundamental rights
> include those guaranteed by the Bill of Rights, as well as
> certain liberty and privacy interests implicitly protected
> by the Due Process Clause, such as the right to marry.
> Washington v. Glucksberg, 521 U.S. 702, 720 (1997).
> Substantive due process also protects against government
> conduct that is so egregious that it "shocks the
> conscience," even where the conduct does not implicate any
> specific fundamental right.  See United States v. Salerno,
> 481 U.S. 739, 746 (1987).
>
> Laws disturbing fundamental rights receive strict scrutiny
> and will be upheld if they are "narrowly tailored to serve a
> compelling state interest."  Reno v. Flores, 507 U.S. 292,
> 302 (1993).  However, regulations not implicating
> fundamental rights (in other words, those claims attacking
> particularly egregious or arbitrary governmental actions)
> are analyzed under the deferential standard referred to as
> the rational basis review, and will generally succeed only
> if the government action shocks the conscience.  See
> Glucksberg, 521 U.S. at 728.
>
> With respect to Cooper's claim, it appears that he is
> asserting that he has a fundamental right to adequate
> treatment as a civilly committed sex offender, and that as a
> result of the prison setting he is not being afforded
> adequate treatment.  The Supreme Court established that

19

there exists a constitutionally protected right of mentally
retarded persons confined at a state institution to
minimally adequate treatment.  Specifically, the Supreme
Court held that there is a constitutional right of mentally
disabled persons confined at a state institution to
"minimally adequate habilitation", self-care treatment or
training to the extent necessary to protect their recognized
fundamental rights to safety and freedom from physical
restraints.  Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental
right is at issue, a district court must balance "the
liberty of the individual and the demands of an organized
society" to determine whether such right has been violated.
Youngberg, 457 U.S. at 320.  Although restrictions burdening
a fundamental right generally receive strict scrutiny, in
Youngberg, the Supreme Court found that this sort of
rigorous analysis would unduly burden the ability of states,
specifically their professional employees, to administer
mental health institutions.  Id. at 322.  Consequently, the
Court concluded that "the Constitution only requires that
the courts make certain that professional judgment was in
fact exercised," because "[i]t is not appropriate for the
courts to specify which of several professionally acceptable
choices should have been made."  Id. at 321 (internal
quotation and citation omitted).  Thus, a decision, "if made
by a professional, is presumptively valid; liability may be
imposed only when the decision by the professional is such a
substantial departure from accepted professional judgment,
practice, or standards as to demonstrate that the person
responsible actually did not base the decision on such
judgment."  Id. at 323.

In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United
States Court of Appeals for the Third Circuit held that New
Jersey's unique former statutory scheme for sex offenders
that predicated the term of sentence on a prisoner's
response to treatment and created a right to treatment
created a fundamental and cognizable liberty interest in
treatment, for purposes of both procedural and substantive
due process analyses.  288 F.3d at 545.  Leamer was not a
civilly committed sex offender like plaintiff here.  Rather,
Leamer was a convicted sex offender whose confinement and
treatment were inextricably linked pursuant to statute.  The
sentencing court had classified Leamer as having a "mental
aberration" and in need of "specialized treatment," which
automatically subjected Leamer to the maximum incarceration
permitted by law unless he is cured prior to that point.
Leamer could not reduce his sentence through good behavior

credits, parole policies or other credits.  Instead, he could only shorten his incarceration through successful therapy, which was an "inherent and integral element" of the statutory scheme.  Consequently, the Third Circuit found that deprivation of treatment would be a grievous loss not emanating from the sentence.  <u>Leamer</u>, 288 F.3d at 544.

Apart from that recognized in <u>Youngberg</u> to prevent the violation of recognized fundamental rights to safety and freedom from physical restraints, this Court finds the Third Circuit's holding in <u>Leamer</u> to clearly extend to an involuntarily committed sex offender under New Jersey's SVPA.  Like Leamer, the length of Cooper's confinement under the SVPA is predicated on his response to treatment.  Indeed, the provisions of the SVPA explicitly recognize New Jersey's obligation to provide treatment to SVPs for their eventual release based on successful therapy.  <u>See</u> <u>N.J.S.A</u>. 30:4-27.32(a)("If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and **treatment** of sexually violent predators")(emphasis added); <u>N.J.S.A</u>. 30:4-34(b)("The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act.  Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); <u>N.J.S.A</u>. 30:4-27.36(a)(At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge from involuntary commitment status"); <u>see</u> <u>also</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346, 367 (1997)(concluding from similarly-worded provisions of Kansas SVP Act that "the State has a statutory obligation to provide 'care and treatment for [persons adjudged sexually dangerous] designed to effect recovery ....")(alterations in original)(internal citations omitted).

Therefore, based on <u>Youngberg</u> and <u>Leamer</u>, this Court concludes that Cooper may have a fundamental liberty interest in treatment, but has not stated a cognizable claim at this time for purposes of both procedural and substantive due process analyses.  <u>See</u> <u>Bailey v. Gardebring</u>, 940 F.2d 1150, 1154 (8th Cir. 1991), <u>cert</u>. <u>denied</u>, 503 U.S. 952 (1992)(where the Eighth Circuit noted that <u>Youngberg</u> did not

establish a right for the civilly committed to treatment per
se; the Supreme Court only "held that the Constitution
required only such 'minimally adequate training ... as may
be reasonable in light of [the] liberty interest[ ] in
safety and freedom from unreasonable restraints.'")(quoting
Youngberg, 457 U.S. at 322).  In Bailey, the Eighth Circuit
concluded that plaintiff had no right to "psychiatric
treatment to overcome a 'sexual offender condition'"
because he "was neither in danger during his civil
commitment nor was he subject to any restraints beyond the
ordinary incidents of any involuntary confinement."  Id. at
1153, 1154.  Citing Bailey, district courts in the Eighth
Circuit have since concluded that civilly committed sexual
predators have no substantive due process right to mental
health treatment, adequate or otherwise.  See Semler v.
Ludeman, 2010 WL 145275, at *26 (D. Minn. Jan. 8,
2010)("Because this Court has not recognized a
constitutional right to effective 'treatment' in the context
of civilly committed sex offenders, Plaintiffs [alleging
substantive due process violations through ineffective
treatment] have failed to allege a due process claim
....")(citing Nicolaison v. Ludeman, 2008 WL 508549, at *8
(D. Minn. Feb. 11, 2008)(finding, in ultimately concluding
that involuntarily committed sex offender's right to
treatment is not "clearly established" for purposes of 28
U.S.C. § 2254(d)(1), that Youngberg "only recognized a right
to 'minimally adequate' treatment that reduces the need for
restraints," and not a "comparable right to treatment that
facilitates release")).

Indeed, based on the allegations and admissions by plaintiff
in his Complaint, Cooper fails to show any procedural or
substantive due process violations at this time.  He does
not demonstrate a categorical denial of therapy and
treatment sessions due to the prison setting in which he
receives his treatment.  Rather, his complaints more aptly
demonstrate his personal dissatisfaction with a treatment
plan that has plaintiff separated from his preferred "mental
support" group.  Moreover, Cooper admits that he was placed
on treatment probation because he has missed sessions,
although Cooper does not fully concede that he himself has
been uncooperative.  Rather, it appears from the allegations
that Cooper merely is complaining that the NJDOC group
movement causes him to be frustrated and miss group
sessions.  Thus, there simply is no evidence other than
Cooper's bald allegation that his treatment and group
therapy sessions are curtailed as punishment for filing
grievances or complaining.

In Leamer, the Third Circuit, relying on Sandin, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest. Leamer, 288 F.3d at 546. Similarly, in the instant case, although Cooper and other disruptive and agitative residents may be placed in MAP status in response to their behavior or uncooperation, there is no indication from the allegations here that these residents have been or will be denied treatment.

Indeed, there are no factual allegations of an absolute denial of treatment. Cooper merely alleges that prison staff regulate movement and conduct searches and other policy measures for the orderly running and security of the EJSP facility as a whole, which Cooper feels affects his access to the treatment sessions of his choice. He does not allege that he has been denied treatment altogether. Further, Cooper recites legal conclusions in his complaint about being made to feel like a "prisoner" rather than a civilly committed person rather than allege any facts to support a claim that he has been denied treatment. Indeed, he seems mostly fixated on the idea of being in a "prison setting" and does not allege any real disruption or interference with his treatment, other than controlled movements in the EJSP facility, which on its own, does not curtail group therapy.

This Court likewise finds no substantive due process violation at this time. Substantive due process prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty." Glucksberg, 521 U.S. at 721. Under this standard, Defendants' actions in denying Cooper his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the conscience. See Leamer, 288 F.3d at 546-47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

Here, as demonstrated above, defendants have not categorically declined to provide any mental health

treatment to Cooper.  Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Cooper's substantive due process rights. Indeed, plaintiff's allegations, as set forth above, are merely conclusory and factually unsubstantiated.  Cooper has not shown any disruption of treatment.  Instead, he simply objects to the manner and place in which treatment and sessions are provided.

Thus, the Court concludes that treatment has not been denied to Cooper, as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged.  Further, this Court concludes that the allegations asserted in Cooper's Complaints do not show such egregious conduct or disruption as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, based on the facts as alleged in the Complaint, Cooper's claim alleging inadequate treatment will be dismissed for failure to state a cognizable claim of a deprivation of a constitutional right.

(March 23, 2011 Opinion at pp. 31-40).

Based on Cooper's current allegation that he has been denied all group and therapy treatment for a significant period of time, almost one year, which this Court must accept as true at this preliminary screening stage, the Court is constrained to allow this claim to proceed at this time.

D.  Supervisor Liability

Finally, it would appear from the allegations in the amended Complaint that Cooper's claims against defendants, Mark Singer and David Dacosta, both assistant attorneys in the New Jersey State Attorney General's Office in Trenton, New Jersey, are based on supervisor liability alone.

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. See Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); Robertson v. Sichel, 127 U.S. 507, 515-16 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").  In Iqbal, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to Bivens[7] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct. at 1948.  Thus, each government official is liable only for his or her own conduct.  The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct.  Id., 129 S.Ct. at 1949.

Under pre- Iqbal Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy,

---

[7]   Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal quotation marks omitted).  "Particularly after Iqbal, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." Id. at 130.

The Third Circuit has recognized the potential effect that Iqbal might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether Iqbal requires narrowing of the scope of the test.  See Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in light of Iqbal, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official).  Hence, it appears that, under a supervisory theory of liability, and even in light of Iqbal, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's

26

constitutional right.  Williams v. Lackawanna County Prison, 2010
WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

    Facts showing personal involvement of the defendant must be
asserted; such assertions may be made through allegations of
specific facts showing that a defendant expressly directed the
deprivation of a plaintiff's constitutional rights or created
such policies where the subordinates had no discretion in
applying the policies in a fashion other than the one which
actually produced the alleged deprivation; e.g., supervisory
liability may attach if the plaintiff asserts facts showing that
the supervisor's actions were "the moving force" behind the harm
suffered by the plaintiff.  See Sample v. Diecks, 885 F.2d 1099,
1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

    Here, plaintiff provides no facts describing how the
supervisory defendants, Singer and Dacosta, allegedly violated
his constitutional rights, i.e., he fails to allege facts to show
that these defendants expressly directed the deprivation of his
constitutional rights, or that they created policies which left
subordinates with no discretion other than to apply them in a
fashion which actually produced the alleged deprivation.  In
short, Cooper has alleged no facts to support personal
involvement by the supervisory defendants, and simply relies on
recitations of legal conclusions such that they failed to
supervise, oversee or correct the treatment of civilly committed
residents at EJSP-STU as prisoners in violation of plaintiff's

constitutional rights.  These bare allegations, "because they are
no more than conclusions, are not entitled to the assumption of
truth."  Iqbal, 129 S.Ct. at 1950.  Accordingly, this Court will
dismiss with prejudice the amended Complaint, in its entirety, as
against the defendants, Singer and Dacosta, because it is based
on a claim of supervisor liability, which is not cognizable in
this § 1983 action, pursuant to 28 U.S.C. § 1915(e)(2)(B).[8]

## V.  CONCLUSION

For the reasons set forth above, plaintiff's amended
Complaint will be dismissed with prejudice, in its entirety as
against named defendants, Mark Singer and David Dacosta, for
failure to state a claim upon which relief may be granted,
pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Likewise, plaintiff's
claims alleging unconstitutional conditions of confinement in a
prison setting, including unconstitutional strip searches, will
be dismissed with prejudice as against all named defendants for
failure to state a claim, pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii).  Finally, plaintiff's claim that he was denied
all group and therapy treatment form May 12, 2010 to April 30,

---

[8]  The Court also notes that the claim against the officials
at the New Jersey State Attorney General's Office asserts only
that these defendants overlooked and failed to correct the
condition of plaintiff's confinement, namely, that he was a
civilly-committed person confined in a prison setting.  As this
Court found such claims not to be cognizable, see Sections A and
B of this Opinion, supra, these defendants would be dismissed
from this action accordingly.

2011, will be allowed to proceed at this time.  An appropriate

order follows.


                                    s/ Faith S. Hochberg
                                    FAITH S. HOCHBERG
                                    United States District Judge